## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TATIANA TOOLEY, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | |
| CITY OF ALLENTOWN, | : | DEMAND FOR JURY TRIAL |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

Plaintiff Tatiana Tooley (hereinafter "Plaintiff" or "Mrs. Tooley"), by and through her undersigned counsel, Willig, Williams & Davidson, brings this civil action against Defendant City of Allentown (hereinafter "Defendant" or "Allentown") alleging that she was discriminated against in the terms, conditions and privileges of her employment due to her age, race, and national origin by means of her unlawful termination on November 8, 2022, in violation of Title VII of The Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* ("Title VII"), the Age Discrimination in Employment Act of 1976 ("ADEA"), and § 5(a) of the Pennsylvania Human Relations Act, 43 P. S. § § 951-963 ("PHRA"). Mrs. Tooley also further alleges that the Defendant discriminated against her by subjecting her to a hostile work environment based on her age, race, and national origin in violation of the PHRA and Title VII. Mrs. Tooley seeks damages including back-pay, front-pay, compensatory, punitive, costs and attorney's fees, injunctive relief, and all other relief that this Court deems appropriate. Plaintiff alleges as follows:

## PARTIES

1.     Plaintiff, Tatiana Tooley, is an adult individual that is a resident of Allentown, Pennsylvania. Mrs. Tooley is a fifty-six (56) year old Latina of Panamanian heritage, and therefore a member of a protected classes within the meaning Title VII, the ADEA, and the PHRA.

2.      At all relevant times, Mrs. Tooley was employed by Allentown and was a covered "employee" under Title VII, the ADEA, and the PHRA.

3.      Defendant, City of Allentown maintains its headquarters at 435 Hamilton St., Allentown, Pennsylvania, which is located in Lehigh County.

4.      The City of Allentown, a Pennsylvania third-class city.

5.      At all relevant times, Defendant did business in Pennsylvania and continually employed at least 15 employees.

6.      At all relevant times, Defendant was an "employer" engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h), the ADEA, and the PHRA.

7.      At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of which acted within the scope of his or her job responsibilities.

## JURISDICTION AND VENUE

8.      All paragraphs are incorporated as though fully set forth herein.

9.      This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

10.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiff's claims occurred within this District and Defendant resides in this District.

11.     This Court has personal jurisdiction over this matter because Defendant is located in this District and conducts substantial business activity in this District, and because many of the unlawful acts described herein occurred in this District and gave rise to the claims alleged.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     All paragraphs are incorporated as though fully set forth herein.

13.     Mrs. Tooley has fully exhausted her administrative remedies.

14.     Mrs. Tooley dual filed an administrative Charge of Discrimination with the Pennsylvania Human Relations Commission (hereinafter "PHRC") the Equal Employment Opportunity Commission (hereinafter "EEOC"). The PHRC assigned the Charge of Discrimination No.  EEOC assigned the Charge of Discrimination No. 17F-2023-60369. A true and correct copy of Mrs. Tooley's Charge of Discrimination is attached hereto as Exhibit "A."

15.     On or about May 18, 2026, the EEOC issued to Mrs. Tooley a Notice of Right to Sue. A true and correct copy of which is attached hereto as Exhibit "B."

16.     Mrs. Tooley filed this Complaint within ninety (90) days of receipt of the Notice of Right to Sue relative to Charge No. 17F-2023-60369 and prior to two years after the PHRC closed the investigation.

17.     Accordingly, Mrs. Tooley has fully complied with all administrative prerequisites for the commencement of this action.

## STATEMENT OF FACTS

18.     All paragraphs are incorporated as though fully set forth herein.

19.     Upon being sworn in as Mayor of the City of Allentown in January 2022, Matt Tuerk, a White male, filled all positions in the Office of the Mayor with very young and overwhelmingly White employees, including: Connor Corpora; Michaela Boyer, Chelsea Koerbler, Laura Ballek-Cole, and Genesis Ortega.

3

20. Upon information and belief, Mayor Matt Tuerk purposefully structured his staffing based on these demographics to create both the appearance of and environment of a youthful atmosphere in the Office of the Mayor.

21. Prior to Mayor Matt Tuerk's swearing in, Mrs. Tooley began her employment with Allentown in June 2019 as a Human Relations Officer ("HRO") which at the time was housed in the Department of Community and Economic Development (Department of "CED").

22. Mrs. Tooley's duties as an HRO were vast, and included: (1) operating as the manager of the Human Relations Commission ("HRC") by supervising the administrative functions of the Commission and its employees, and by conducting topical trainings for Allentown's Human Relations Commissioners; (2) supervising an HRC investigator and all investigations concerning discrimination in employment, housing and public accommodations, including consulting with Allentown's Solicitor's office and advising Allentown Officials and the HRC on the findings from discrimination complaints; (3) preparing and conducting community presentations on discrimination, cultural awareness, and sensitivity; (4) providing information on Pennsylvania Landlord and Tenant law to Allentown residents and mediating landlord/tenant disputes; and, (5) managing the Bank on Allentown financial education initiative.

23. Mrs. Tooley was an excellent employee and excelled at her job as the manager of the HRC. During her tenure managing the HRC she never received any discipline.

24. In the final months of 2021, Mrs. Tooley, alongside her direct supervisor, Leonard Lightner (Black, approximately 58 years old), the Director of the Department of CED, began crafting a proposed Office of Diversity, Equity, and Inclusion (Office of "DEI") to oversee all of Allentown's equitable policies and programs and advising all Boards, Authorities, and Commissions of Allentown on their equity practices. The Office of DEI was to be run by a

4

Manager of the Office of DEI. The role of HRO would be dissolved, and the duties assigned to the HRO would be transferred to and absorbed by the Manager of DEI.

25.    In February of 2022, Leonard Lightner was promoted to Chief Operating Officer and Vicki Kestler (White, approximately 65 years old) was named as the new Director ofCED.

26.    In March of 2022, Mrs. Tooley and Leonard Lightner met with Mayor Matt Tuerk to propose the new Office of DEI. At that time Mayor Matt Tuerk appeared to be supportive of the initiative and indicated that they should work on transitioning Mrs. Tooley to the Manager of DEI role as soon as possible.

27.    Despite the appearance of support, neither Mayor Matt Tuerk and his agents did not take any steps to create the Office of DEI initiative in March, April, and most of May 2022.

28.    On May 25, 2022, Mrs. Tooley met with Mayor Matt Tuerk, City Solicitor Matthew Kloeber, Chief Operating Officer Leonard Lightner, and Human Relations Investigator Ciera Villalobos, to discuss the new Office of DEI and the transition of Mrs. Tooley to her new role as its manager. In the meeting, Mayor Matt Tuerk indicated that he envisioned the new position to be substantially more limited than how Mrs. Tooley and Mr. Lightner had originally presented it just two months prior. Specifically, the new position would no longer include any of the extensive duties previously assigned to the HRO that relate to the Human Relations Commission or Landlord/Tenant conflicts. The duties of the HRO regarding supervision of an Investigator were to be subsumed by the duties of City of Allentown Solicitor Kloeber. The duties of the HRO regarding administrative assistance of the Human Relations Commission were to be transferred to Mayor Matt Tuerk's young, White, Executive Assistant, Connor Corpora.

29.    On information and belief, Connor Corpora has no experience with administrative law issues, anti-discrimination work, or how to run an administrative agency. *See* https://www.linkedin.com/in/connorcorpora/ (last visited August 7, 2026).

30.    Immediately thereafter, Mayor Matt Tuerk told Mrs. Tooley to relinquish all her duties relating to the Human Relations Commission, including her supervision of its investigations and the HRO investigator, and to begin operating within her new role at once. Mayor Matt Tuerk instructed Mrs. Tooley that he was moving her office from the third floor, to just two (2) doors down from his own office on the fifth floor.

31.    During the months that followed, Mayor Matt Tuerk proceeded to fire or constructively discharge a number of older, minority employees in senior positions and replacing them with younger, White employees, as further outlined herein.

32.    Mrs. Tooley was tasked with drafting a job description and a Resolution to create the position of "Manager of the Office of Equity and Inclusion" to be presented to City Council. Mrs. Tooley did so immediately and submitted it to Mayor Matt Tuerk and Leonard Lightner for their review. Mayor Matt Tuerk suggested some small edits, which Mrs. Tooley completed before returning a final draft of the Resolution to Mayor Matt Tuerk.

33.    Despite relinquishing a majority of Mrs. Tooley's responsibilities as the Human Relations Officer,  Mayor Matt Tuerk did not sign the Resolution, present it to City Council, formally create an Office of Equity and Inclusion, or officially announce Mrs. Tooley's new position.

34.    During June and July of 2022, Mrs. Tooley periodically emailed Mayor Tuerk requesting a meeting to discuss her transition into her new role. She received no response until August 2022.

6

35.    In July of 2022, the Director of Human Resources ("HR") for the City of Allentown, Melony Sallie-Dosunmu (Black, female, 60 years old), was terminated by Mayor Matt Tuerk. Mayor Matt Tuerk alerted Allentown employees of the HR staffing change via e-mail, stating that Mrs. Sallie-Dosunmu resigned, which she did not, and that he had already appointed an Interim Director of HR, Jessica Baraket (White, female, 30-something years old). Mrs. Baraket was hired as Interim Director of Human Resources even though she had no prior HR experience.

36.    Because of this staffing change, and due to her previous work as a Human Relations Officer, many City of Allentown employees approached Mrs. Tooley to complain about being subjected to workplace discrimination and to seek advice as to possible remedies or procedures for filing EEOC complaints.

37.    Mrs. Tooley likewise became privy to details about additional incidents regarding Allentown employees that assured her that people of color are treated differently by Allentown and that, with respect to its employment practices, Allentown was not doing anything to alleviate the rampant culture of severe, pervasive and regular racial discrimination occurring in the workplace.

38.    By way of an example, a White middle-aged Zoning Officer, physically assaulted his supervisor after a verbal altercation. The White Male was suspended for one (1) week, with pay, and was not otherwise reprimanded. Mrs. Tooley concluded that had the individual been a person of color they would have been fired, arrested, and had charges pressed against them for assault.

39.    As a result of these conversations with many Allentown employees complaining about workplace discrimination, Mrs. Tooley began feeling helpless. While she had been tasked with ensuring diversity, equity, and inclusion in the offices and programs of Allentown she was

stripped of her authority to enforce anti-discrimination laws and placed in a situation whereby her inability to address these issues reflected poorly on her job performance, even though it was outside her job description.

40. Unable to sleep and experiencing severe stress and anxiety regarding the ongoing and unchecked discrimination occurring at her place of employment, Mrs. Tooley sought the services of a professional therapist in the Summer of 2022.

41. During the Summer of 2022, Mrs. Tooley also met with other Allentown employees at her home to discuss their discriminatory workplace experiences. During these meetings, each employee described their own experiences of discrimination within the workplace.

42. Also in July of 2022, Mrs. Tooley's long-time supervisor, Leonard Lightner, resigned from his position as Chief Operating Officer.

43. Throughout her employment, many other older employees of color or with national origins other than the U.S. shared their workplace experiences with Mrs. Tooley seeking her guidance on how to handle the discriminatory actions.

44. Upon information and belief, it is difficult for Mayor Matt Tuerk to have any of his ideas challenged by a person of color, particularly where the person of color is older than him or of a different national origin.

45. On August 19, 2022, Mrs. Tooley met with Mayor Matt Tuerk and his two (2) young, White assistants, Makala Boyer and Connor Corpora, to present on the functions of the Office of Equity and Inclusion, the duties of its manager, and a proposed timeline for her transition. Mayor Matt Tuerk replied that he will codify the new position in 2023.

46. Over the next two (2) months, it became increasingly clear to Mrs. Tooley that Mayor Matt Tuerk had no intention of formally and officially transitioning Mrs. Tooley to a

position under his direct supervision in the Office of the Mayor due to her age, race, and national origin.

47.    Furthermore, pressing issues with the administration of the Human Relations Commission were being disregarded by the Office of the Mayor. Such failures reflected poorly on Mrs. Tooley as manager of all City initiatives and policies on DEI, even though she was instructed by Mayor Matt Tuerk not to involve herself with any HRC matters.

48.    During the six (6) months that Mrs. Tooley's office was merely a few feet from the Mayor's, Mayor Matt Tuerk rarely, if ever, spoke to Mrs. Tooley - even in a casual or social manner. Additionally, Mayor Matt Tuerk and his young staff consistently failed to reply to e-mails from Mrs. Tooley.

49.    Throughout Mrs. Tooley's employment with Allentown, she had only received positive feedback from her supervisors. Mrs. Tooley never received a negative performance review, nor was she ever disciplined.

50.    Throughout the final six (6) months of her employment with Allentown, Mayor Matt Tuerk, when speaking to City Council members and to members of the public, lauded Mrs. Tooley as "the best thing ever" when it came to DEI.

51.    Notwithstanding Mayor Matt Tuerk's consistent public commendations of Mrs. Tooley, he continued to limit Mrs. Tooley's job duties to those of lesser significance and made clear through his and his staff's actions that she was unwelcome.

52.    Upon information and belief, Mayor Matt Tuerk, the Director of CED, and the Deputy Director of CED did not believe that older people of color should present on such important matters to City Council, and, on multiple occasions, attempted to reassign presentations to City

Council from older and minority program directors, such as Mrs. Tooley, to younger, White employees.

53.     For example, Mrs. Tooley was subjected to an attempt to strip her of the opportunity to present on the project that she manages based on the discriminatory biases of Mayor Matt Tuerk and the Director and Deputy Director of CED.

54.     On September 14, 2022, Mrs. Tooley received an e-mail from Mark Hartney (White, approximately 45 years old), Deputy Director of the Department of Community and Economic Development, requesting that she educate him on the "Bank On Allentown" program so that he could present on its successes to City Council. Even though Mrs. Tooley had been the only person managing the program for the past two (2) years and that the "Bank On Allentown" program was to be transferred from the Department of CED to the Office of Equity and Inclusion that Mrs. Tooley was to manage, Mayor Matt Tuerk asked that Mark Hartney instead give the presentation.

55.     In response, Mrs. Tooley asserted that the "Bank On Allentown" program has always been her responsibility and that she was the most proficient person to present on the initiative to City Council. Moreover, she asked Mr. Hartney if Mayor Matt Tuerk and Vicki Kestler had problems with a person of color presenting to City Council.

56.     Mr. Hartney ceded to Mrs. Tooley's initiative and Mrs. Tooley successfully presented on "Bank On Allentown" to City Council.

57.     During the end of September 2022, Mrs. Tooley received e-mails from the Chair of the HRC complaining that Mrs. Tooley had not been doing her job of managing the HRC, had not been showing up to HRC meetings, and had not acted on requests to complete assignments given by the HRC Chair. Although Mrs. Tooley had informed the HRC of her change in job duties in

May of 2022, it became evident to Mrs. Tooley that the HRO duties that were passed to the Mayor's Executive Assistant and to the City Solicitor were not being completed and that Mrs. Tooley was being blamed for their lack of follow-through.

58.    On September 20, 2022, Mrs. Tooley contacted the City's Human Resources Recruitment Manager, Clarissa Werley, for a copy of her current job description. Mrs. Werley responded with a position description for "DEI Manager" in the Office of the Mayor. Mrs. Tooley subsequently forwarded this description to the HRC Chair.

59.    On or about early October 2022, Mrs. Tooley, in an effort to address the concerns of Allentown employees concerning their claims of unlawful discrimination, met with City Solicitor Matthew Kloeber because Allentown had no qualified Human Resources professional.

60.    In the evening of October 17, 2022, The Lehigh Valley Ramblings Blog posted an article written by Bernie O'Hare titled "Tuerk Terminates Parks Director – Others May Have Been Fired as Well." The article announced the termination of Karen El-Chaar (White, approximately 60 years old), the Director of Parks and Recreation, and named her replacement as Rick Holtzman (White, approximately 35 years old). The article goes on to say that "according to Allentown sources, the Tuerk tomahawk has also landed on Human Relations Officer Tatiana Tooley and IT Director Matt Liebert" (White, approximately 57 years old).

61.    Obviously, this news was confusing to Mrs. Tooley as she had never been warned or disciplined about her work product.

62.    On the morning of October 18, 2022, Mrs. Tooley received a call from the President of City Council, Cynthia Mota, and Councilman Daryl Henricks alerting her to the article and indicating that IT Director Matt Liebert has just been fired.

63.    Minutes later, she was summoned to Mayor Matt Tuerk's office, along with multiple City Solicitors. Mayor Matt Tuerk asked her to resign to which Mrs. Tooley refused. Mayor Matt Tuerk then told Mrs. Tooley that she was fired. Mayor Matt Tuerk then asked her to sign a release of liability in exchange for eight weeks of severance pay, to which Mrs. Tooley refused. Mayor Matt Tuerk then reiterated to Mrs. Tooley that she was no longer permitted to conduct any work on behalf of Allentown, and that, following the depletion of her PTO on November 8, 2022, Mrs. Tooley would be terminated.

64.    During the meeting, neither Mayor Matt Tuerk nor any other employee stated that she was being terminated for "poor performance," despite later telling the Pennsylvania Human Relations Commission that she was allegedly terminated because of her performance.

65.    As stated above, Mrs. Tooley had never been warned or disciplined about her work product nor did Allentown produce any evidence of the false allegation during the Pennsylvania Human Relation Commission's investigation.

66.    Defendant's conduct was caused by, or at least motivated by, Mrs. Tooley's age, race, and national origin in violation of the PHRA and Title VII.

67.    As a direct and proximate result of the discriminatory conduct by Defendant, Mrs. Tooley has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I
## Violation of the PHRA and Title VII - Disparate Treatment
## (Age, Race, and National Origin)

68.    The proceeding paragraphs are incorporated herein by reference as though set forth in full.

69. Plaintiff's protected classes are age, race, and national origin.

70. Defendant discriminated against Plaintiff with respect to the terms, conditions and privileges of employment which led to her unlawful termination.

71. Plaintiff's protected classes were a determining factor or at least a motivating factor in Defendant's decision to terminate her.

72. Plaintiff was treated differently than others not in her protected classes for engaging in the same or similar behavior.

73. Accordingly, Plaintiff alleges Defendant violated § 5(a) of the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, the ADEA, and Title VII.

74. Plaintiff prays that Defendant be required to provide all appropriate remedies under Title VII, the ADEA, and the PHRA.

## COUNT II
### Violation of the PHRA and Title VII - Hostile Work Environment
### (Age, Race, and National Origin)

75. The proceeding paragraphs are incorporated herein by reference as though set forth in full.

76. Plaintiff's protected classes are age, race, and national origin.

77. Plaintiff and similarly situated employees were discriminated against based on their race and/or national origin by Defendant.

78. The discriminatory statements and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Mrs. Tooley, and would be viewed as objectively hostile and abusive to a reasonable person.

79. Mrs. Tooley was aware that employees complained numerous times to City of Allentown supervisors directly and through EEOC charges such that the City of Allentown has

13

actual or constructive knowledge of the ongoing discrimination and harassment.

80.     Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment.

81.     Defendant discriminated against Plaintiff on the basis of her age, race, and national origin in violation of the PHRA, the ADEA, and Title VII.

82.     Plaintiff prays that Defendant be required to provide all appropriate remedies under Title VII, the ADEA, and the PHRA.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, Plaintiff seeks this Honorable Court to:

    a.    Damages for past and future monetary losses as a result of Defendant's unlawful discrimination;

    b.    Compensatory damages;

    c.    Punitive damages under Title VII;

    d.    Liquidated damages;

    e.    Emotional pain and suffering;

    f.    An injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices that violate Title VII, the ADEA, and PHRA;

    g.    An award of costs incurred herein, including attorneys' fees to the extent allowable by law;

    h.    Pre-judgment and post-judgment interest, as provided by law; and

       i.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Mrs. Tooley demands a trial by jury in this action.

Respectfully submitted,

**WILLIG, WILLIAMS & DAVIDSON**

/s/ *Ryan Allen Hancock*
Ryan Allen Hancock (Pa. No. 92590)
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3600
rhancock@wwdlaw.com

*Counsel for Plaintiff*

Date: August 10, 2026